In the Matter of the Application of the EUREKA BASIN WARE-
HOUSE AND MANUFACTURING COMPANY of Long Island to
acquire title to lands.

The fact that the use to which real estate is intended to be put, or the
structures intended to be built thereon, will tend incidentally to benefit
the public by affording additional accommodations for business, commerce
or manufacture, is not sufficient to bring the case within the operation
of the right of eminent domain; so long as the structures are to remain
under private ownership or control, and no right to their use or to direct
their management is conferred upon the public, the taking for such a
use without the consent of the owner cannot be authorized by statute.
Accordingly *held*, that the provision of the act of 1881 (Chapter 637, Laws
of 1881), purporting to authorize the E. B. W. & M. Co. to acquire title
to lands by proceedings *in invitum*, was unconstitutional and void.

(Submitted June 29, 1883; reargument ordered October 16, 1883; reargued
March 11, 1884; decided May 6, 1884.)

APPEAL from order of the General Term of the Supreme
Court, in the second judicial department, made May 14, 1883,
which affirmed an order of Special Term, appointing commis-
sioners to ascertain the compensation to be paid by the peti-
tioner for lands of John Peters, sought to be claimed in these
proceedings.

The material facts are stated in the opinion.

*Freling H. Smith* for appellant. As the petitioner never
was incorporated, it has no legal existence. (*B. R. & U.
R. R. Co.* v. *Barnard*, 31 Barb. 258; *People* v. *Presi-
dent, etc., of Manhattan Co.*, 9 Wend. 351, 381-2.) The legal
existence of the petitioning company, as a corporation, is at the
foundation of the right to take property for its use. (*In re
B. W. & N. R'y Co.*, 72 N. Y. 245.) The use for which the
land in question is sought to be taken is at least in part a private
use. (*Embury* v. *Connor*, 3 Comst. 511.) Private property
cannot be taken for private use against the owner's consent.
(*Taylor* v. *Porter*, 4 Hill, 147; *Bloodgood* v. *M. & H. R. R.
Co.*, 18 Wend. 59; *Varick* v. *Smith, etc.*, 5 Paige, 137; *In re
R. & C. R. R. Co.* v. *Davis*, 43 N. Y. 137.) As the petitioner

seeks to take the land in question, in part at least for private use, its application should be denied. (*R. & S. R. R. Co.* v. *Davis*, 43 N. Y. 137; *In re N. Y. C. & H. R. R. R. Co.* v. *The M. G. L. Co.*, 63 id. 326; *In re N. Y. C. & H. R. R. R. Co.*, 77 id. 248.)

*Jesse Johnson* for respondent.  The use for which the petitioner requires this property is a public use. (*Beekman* v. *S. & S. R. R. Co.*, 3 Paige, 45, 73, 74, 75; *Matter of Townsend*, 39 N. Y. 171; *B., etc., N. G. L. Co.* v. *Richardson*, 63 Barb. 450; *Mayor, etc.*, v. *Bailey*, 2 Denio, 432, 433; *Matter of Middleton*, 82 N. Y.      ; *Matter of Ryers*, 72 id. 1; *Matter of N. Y. C. & H. R. R. R. Co.*, 77 id. 248, 261, 262, 263; *Munn* v. *People*, 94 U. S. 113, 130, 133; 15 Alb. L. J. 180.) The word "basin," as used in the act of 1881 (Chap. 667), means not only the mere hollow "basin" containing the water, nor merely the hollow and the water, but the place where vessels can float, and the docks and warehouses appurtenant thereto and forming a part thereof. (Webster's Dictionary, *Basin ; Sword* v. *Edgar*, 59 N. Y. 28, 31.)  Where land is taken *in invitum* as and for a use, which is one of those agreed to be public, the right of the public to have and enjoy that use, *sub modo* and in some manner, runs with the taking and remains with the land. (*People* v. *C. & H. R. R. R. Co.*, 28 Hun, 543, 549, 550.)  The objection that the law of 1881 cannot make applicable provisions of the General Railroad Act without re-enacting them is not tenable. (*People, ex rel. Commrs.*, v. *Banks*, 67 N. Y. 568, 575; *Hathaway* v. *Tuttle*, 12 Weekly Dig. 24.)  The act of 1881 does not grant to a corporation an exclusive privilege, immunity or franchise. (*Matter of Gilbert E. Ry. Co.*, 70 N. Y. 348, 349, 370, 371; *St. Paul's F. & M. Ins. Co.* v. *Allis*, 24 Minn. 75; *Wallis* v. *Loomis*, 7 Otto, 154, 164; *Taft* v. *City of Buffalo*, 82 N. Y. 212; *People, ex rel.* v. *Banks*, 67 id. 574.)  Apart from, and before the act of 1881, this company was fully created and clothed with all the necessary powers of a corporation. (*Matter of Van Antwerp*, 56 N. Y. 261; *Teft* v. *City of Buffalo*, 82 id. 204; Angell &

Ames on Corporations, §§ 76, 77; 1 Potter on Corporations, 8; *Matter of N. Y. El. Ry. Co.*, 70 N. Y. 338; *Town of N. H.* v. *Town of H.*, 2 Wend. 110; *Denton* v. *Jackson*, 2 Johns. Ch. 320, 324; *Bow* v. *Allenstown*, 34 N. H. 349; *Mahony* v. *B'k of the State*, 4 Ark. 620.) The legislature is the final and only judge of what corporate objects require special legislation and what objects can be attained under general laws. (*People* v. *Bowen*, 30 Barb. 24, 29; 21 N. Y. 517, 530; *Moshier* v. *Hilton*, 15 Barb. 657; *U. S. Trust Co.* v. *Brady*, 20 id. 119; *Met. B'k* v. *Van Dyck*, 27 N. Y. 400, 448.) The delegation of the right of eminent domain for the acquisition of land for commercial basins and wharves is clearly constitutional. (*Beekman* v. *S. & S. R. R. Co.*, 3 Paige, 44, 73, 74; *Bloodgood* v. *M. & H. R. R. Co.*, 18 Wend. 9, 15, 21, 46.) A commercial basin on navigable water is a public work, and for the constructing of such a work the legislature may lawfully delegate the right of eminent domain. (*Matter of Townsend*, 39 N. Y. 171; *Bloomfield* v. *N. G. L. Co.*, 63 Barb. 450; *Bailey* v. *Mayor*, 2 Denio, 433, 452; *Matter of Vil. of Middletown*, 82 N. Y. 196; *Matter of Ryers*, 72 id. 1; *Edgecumbe* v. *Burlington*, 46 Vt. 218; *Edwards* v. *Stonington Cem. Ass'n*, 20 Conn. 466; *Matter of Deansville Cem. Ass'n*, 66 id. 569; *P. P. & C. I. R. R. Co.* v. *Williamson*, 91 id. 552; *Matter of N. Y. C. & H. R. R. R. Co.*, 77 id. 248, 261, 262, 263; *Munn* v. *People*, 94 U. S. 113; 15 Alb. L. J. 180.) If a basin thus situated and open to the public is a public use, this court will not consider the necessity of its acquisition. (*Matter of D. Cem. Ass'n*, 66 N. Y. 569, 572.) As there is no precise authority for making the word "basin" include so much as warehouses, and if so rendering it makes the act unconstitutional, the court will decline to give it that meaning. (*People, ex rel. Bolton*, v. *Albertson*, 55 N. Y. 50, 56; *Dubois* v. *Ray*, 35 id. 165, 175.)

Rapallo, J. The petitioner was organized as a corporation in the year 1867, by filing a certificate of incorporation under the act of 1848, authorizing the formation of corporations for

manufacturing, mining, mechanical, or chemical purposes. The objects for which the company was formed were declared by its certificate of incorporation to be to acquire by purchase, gift, or otherwise, certain swamp, marsh, and other lands in the county of Kings, which were particularly described in the certificate, and to excavate and construct and maintain one or more basins, docks, wharves and piers, and to erect thereon suitable warehouses, mills, furnaces, foundries, factories, shops, and such other buildings as might be necessary and proper for docking, loading and unloading vessels, for the storage of goods and for carrying on generally the business of a dock, warehousing and manufacturing company, and in any and every other proper and suitable way promoting and increasing the facilities for commerce, manufacture, and business generally.

The amount of its capital stock was fixed " for the present " at the sum of $100,000.

An act was passed April 29, 1868, entitled " An act to limit and define the powers and privileges of the Eureka Basin Warehouse and Manufacturing Company, of Long Island," which provided that the company should have the right to commence business whenever one-half of its capital stock should be subscribed for and ten per cent paid thereon; that the company was authorized and empowered to enter upon Bushwick creek and the marsh and other lands contiguous thereto in the city of Brooklyn, on the land described in their certificate of incorporation, or so much thereof as they might acquire by purchase or gift, and thereupon to excavate, dredge, build, construct, establish, and maintain a dock or docks, basin or basins, piers, wharves, warehouses, and other buildings necessary and proper for the purpose of docking, loading and unloading vessels, and of storing goods and merchandise, and for carrying on the general business of a dock and warehousing company, and that said company should be capable in law of purchasing, holding and conveying any real and personal estate which might be necessary or proper to enable it to carry on its operations, and should have the right to demand and receive reasonable compensation

for its services and reasonable rent, storage, dockage, and wharfage for the use of its premises.

Thus far in the history of the company, it appears to have been a purely private enterprise, the company being authorized to acquire land only by purchase or gift, and to excavate a basin and construct wharves and buildings, all of which would be the private property of the corporation, and subject to its absolute control and use as such.

The amount of capital required to be paid in, before commencing operations, did not indicate an enterprise of much magnitude, the company being authorized to commence operations when $50,000 of stock should be subscribed for, and $5,000 be paid in. But on comparing the boundaries of the tract described in the certificate of incorporation, with the map of the city of Brooklyn, it appears that the land proposed to be acquired by the company for excavation of a basin, and the construction of buildings and wharves, consists of a tract of land in the city of Brooklyn, opposite to Fourteenth street in the city of New York, extending back from the East river about one mile in length, and in some parts about half a mile in width, which tract is intersected by several railroads and numerous streets.

So long as the proposed enterprise was conceded to be private, and the company sought only to acquire the desired tract of land by gift or purchase, no rights of other persons were interfered with, and the company could make such constructions as it might choose upon the land thus acquired. But in the year 1881 an act was passed by which it was evidently intended to give to the enterprise the appearance of an undertaking for public purposes, and to delegate to the company the right of eminent domain, in order to enable it to acquire the desired land by proceedings *in invitum*. Under the last-mentioned act the proceeding now before us was instituted, and it becomes necessary to examine its provisions.

The act is chapter 637 of the Laws of 1881. It purports to be an amendment of the act of 1868, before referred to, and to have been passed July 12, 1881. It appears, however, to have

become a law without the signature of the governor, July 13, 1881, not having been returned by him within ten days after its receipt. The amendment consists of the addition of the following section :

" In case the company shall be unable, after reasonable diligence, to ascertain who are the owners of any of said lands and premises, or shall be unable to agree with such owner or owners as to the price or sum to be paid therefor or for the purchase thereof, then the same and the title thereto may be acquired by the special proceedings prescribed by law for acquiring title to lands for railroad purposes, and said company shall have the right to issue its corporate bonds secured by mortgage, and to sell and dispose of the same from time to time for the purposes of its organization. This act is hereby declared to be a public act, and the basin of said company shall at all times be open to public use for all vessels that may apply therefor, and said company shall commence operations within one year from the passage of this act and expend thereon not less than ten per centum of its capital."

If this were all of the act it would appear that the basin and wharves proposed to be constructed by the company were intended to be open to public use, and that the only part of the enterprise which remained private was that relating to the construction of warehouses, mills, furnaces, factories, etc., and the case has been discussed by counsel on both sides as if the only question in the case was whether the purposes last mentioned, being private, and the basin and wharves being public, the delegation to the company of the right of eminent domain was justified. That, however, is far from being the only question, or the real question, for the act contains a very important proviso, which gives quite a different complexion to the enterprise, but which, for some unexplained reason, has not been referred to by counsel on either side, although this court expressly directed the case to be reargued on the question whether it was a proper one for the exercise by the corporation of the right of eminent domain.

This proviso immediately follows the last quoted portion of

the act of 1881, and is in the following words : " Provided, however, that the provisions of this act shall not apply to any part of said basin lying west of First street, between North Thirteenth street and Bushwick creek, nor to any parts lying west of Third and south of North Thirteenth street, or east of Third and south of a line drawn midway between North Ninth and North Tenth streets ; nor to any part thereof lying west of the easterly line of Franklin street, and between the northerly line of Quay street and the northerly bulk-head line of Bushwick creek ; nor to any part thereof lying north of the southerly line of North Fifteenth street, and of a line drawn in continuation thereof in an easterly direction."

No map has been furnished to direct the attention of the court to the extent of the premises thus reserved from public use, but on reference to the map of the city of Brooklyn it will be found that the lands thus reserved embrace the property available for wharves on the southerly and northerly sides of the contemplated basin from its junction with the East river to near the rear of the basin, and also much the larger part of the area of the proposed basin, leaving open to the public simply the means of entrance and a comparatively small area in the center of the basin, so that, if constructed and wharfed as proposed in the certificate of incorporation, the surrounding wharves and warehouses would be the private property of the corporation, and the public would have no rights therein. The wharves will not even have the character of wharves on public navigable waters, but will be on an artificial basin constructed on private property, and it would be extremely difficult to determine what parts of the basin were in fact open to the public.

We cannot regard such a project as a public purpose or use which justifies the delegation to this company of the right of eminent domain. The enterprise is, in substance, a private one, and the pretense that it is for a public purpose is merely colorable and illusory. The taking of private property for private purposes cannot be authorized even by legislative act, and the fact that the use to which the property is intended to

be put, or the structure intended to be built thereon, will tend incidentally to benefit the public by affording additional accommodations for business, commerce or manufactures, is not sufficient to bring the case within the operation of the right of eminent domain, so long as the structures are to remain under private ownership and control, and no right to their use or to direct their management is conferred upon the public.

We have not deemed it necessary to discuss the question whether, if the main purpose of the act were to authorize the construction of a basin and wharves to the use of which the public would be entitled, under regulations to be established by public authority, the use would be a public one, nor the further question whether the addition to such powers of the right to establish private warehouses, shops, mills, or factories, and to carry on the business of a docking, warehousing and manufacturing company, would so far deprive the corporate enterprise of its public character as to invalidate the delegation to the company of the right of eminent domain.

For the reasons before stated, the orders of the General and Special Terms should be reversed, and the proceeding dismissed, with costs.

All concur.

Ordered accordingly.