## *In re* MAYOR, ETC., OF CITY OF NEW YORK.

### *In re* CONSOLIDATED GAS CO.

*(Supreme Court, General Term, First Department. March 31, 1892.)*

1. EMINENT DOMAIN—CONSTITUTIONAL LAW—TAKING WHARF PROPERTY.

   The acquisition of wharf property in the city of New York, by said city, under Laws 1870, c. 383, as amended by Laws 1871, c. 574, authorizing such taking for the improvement of the water front, and to provide a uniform system of wharves and piers, is a taking of private property for public use, within the meaning of the constitution, and under such act the city may take such private wharf property and land under water as may be necessary to carry out its plan.

2. SAME—AGREEMENT WITH WHARF OWNER.

   Under Laws 1870, c. 383, as amended by Laws 1871, c. 574, authorizing the department of docks of the city of New York to acquire for the benefit of said city wharf property therein, by purchase or process of law, and providing that such board might agree with the owners of any such property as to the price, and certify the same to the commissioners of the sinking fund for their approval, and that, if no price should be agreed on, might direct legal proceedings to acquire the same, the dock department, and not the sinking fund commissioners, is the proper body to make the agreement, the act merely requiring the subsequent approval of the agreement when made by the latter body.

3. SAME.

   In such a case, where an offer was made to purchase wharf property from a corporation at a certain price, and an answer requested within 10 days, the failure of the corporation to respond was not excused by the fact that there had been no meeting of the board of directors within the time limited.

Appeal from special term, New York county.

Application of the mayor, aldermen, and commonalty of the city of New York to acquire wharf property. The Consolidated Gas Company appeals from an order appointing commissioners of estimate. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN, J.

*Anderson & Howland,* (*Henry H. Anderson,* of counsel,) for appellant.
*William H. Clark,* Corp. Counsel, (*E. J. Freedman* and *Chas. Blandy,* of counsel,) for respondents.

VAN BRUNT, P. J.    Prior to 1887·the people of the state of New York had granted to the mayor, aldermen, and commonalty of the city of New York land under water extending from low-water mark 400 feet into the North river from the East river to Spuyten Duyvil creek, a pre-emptive right being given to proprietors of the lands adjacent to grants to be made by said mayor, etc., of any of said lands under water.    In 1837, an avenue called "Thirteenth Avenue" was laid out on the map of the city of New York, and declared by the legislature to be the permanent exterior street or avenue along the easterly shore of the Hudson river between the southerly line of Hammond street and the northerly line of 135th street, and the several streets of the city as laid out on the map made by the commissioners under the act of 1807 were continued and extended westerly on said map to said Thirteenth avenue. In 1853 a water grant was made by the city of New York to one Appleby of the water lot, vacant ground, and soil to be made land, and gained out of the Hudson river between the center line of Forty-First street on the south, the center line of Forty-Second street on the north, high-water mark on the east, and the westerly line of Thirteenth avenue on the west, reserving therefrom as public streets such parts of Forty-First and Forty-Second streets, Twelfth and Thirteenth avenues, as were then laid out as public streets, but giving nevertheless to the grantee and his assigns the wharfage and cranage and other emoluments to arise from the exterior line of Thirteenth avenue. By certain mesne conveyances this property, with the rights conveyed by said grant, became the property of the Metropolitan Gas-Light Company, and in 1862 the mayor, etc., passed an ordinance authorizing that company to erect a pier on the North river between Forty-First and Forty-Second streets, opposite their gas works, the center thereof being on the center line of the center of the block between Forty-First and Forty-Second streets. This pier was built by the gas company, and remained its property until the merger of that corporation in the Consolidated Gas Company, which became vested with the title to the property in question.    This pier was a public pier, open to the use of commerce, and occupied and used constantly by vessels bringing coal, which was brought and discharged there, principally for the supply of the necessities of the appellant corporation in its work of manufacturing gas with which to supply the city.    By chapter 383 of the Laws of 1870, as amended by chapter 574 of the Laws of 1871, the department of docks, as a part of the corporate organization of the city of New York, was given charge and control, subject in certain particulars to the commissioners of the sinking fund, of the wharf property belonging to said city, including all the wharves, piers, bulkheads, and structures thereon and waters adjacent thereto, and all the slips, basins, docks, water fronts, land under water, and structures thereon.    Sections 33 and 34 of the act required the department of docks to adopt a plan or plans for the improvement of the water front of the city, and to send the same to the commissioners of the sinking fund for adoption or rejection, which plan was to be the sole plan according to which any wharf, pier, bulkhead, or structure should thereafter be laid out or constructed within the territory or district embraced in it, and specified upon such plan.    By subdivision 4 of section 99 of said amended act the said department was authorized to acquire, in the name and for the benefit of said city, any and all wharf property in said city to which the corporation of the city of New York then had no right or title, and any rights, terms, easements, and privileges pertaining to any wharf property in said city, and not owned by said corporation, and the said board might acquire the same either by purchase or by process of law, as in said act provided.    The submission further

provided that said board might agree with the owners of any such property upon the price for the same, and certify such agreement to the commissioners of the sinking fund, and, if said commissioners approve of such agreement, the said board should take from such owners at such price the necessary conveyances for vesting said property in the mayor, etc., forever. The subdivision further provided that, if said board should deem it proper that said corporation should acquire possession of said wharf property for which no price can be agreed upon by the owners thereof and the said board, said board may direct the counsel to the corporation to take legal proceedings to acquire the same for said city, etc. Subdivision 5 provides that when the plan or plans of the dock department have been adopted by the commissioners of the sinking fund, the said department shall proceed according to said plan to lay out, establish, and construct wharves, piers, bulkheads, basins, docks, or slips in the territory or district embraced in said plan or plans, and in, upon, or about the property owned by said mayor, etc., without interfering with the property or rights of any other person, except so far as might be necessary to insure the safety and stability of the wharves, piers, bulkheads, basins, or slips so to be constructed. And subdivision 6 provided that when any of the wharves, etc., constructed under the provisions of the act shall be opened to the public use said department of docks shall regulate the charges for wharfage and dockage of all vessels admitted thereto, and said board might appropriate any of said wharves, etc., to the sole use of special kinds of commerce, and might, in the name of the city, lease any or all of such property for a term not exceeding 10 years, etc.

The department of docks duly adopted a plan for the improvement of the water front, which was submitted to the commissioners of the sinking fund, and approved by them. It is proposed by the department, as shown by the plan which forms part of this proceeding, to widen Twelfth avenue so as to make it a street 250 feet wide, and to build a stone bulkhead along the exterior line of the avenue widened, this exterior line being coincident with the dock commissioners' bulkhead line. And it is claimed by the appellant that for the purpose of building that bulkhead it proposed to take a piece of land and the dock of the appellant, and to extinguish the right of the appellant to the wharfage to arise from the exterior line of Thirteenth avenue, and that they have no right to do this, because Twelfth avenue can be widened, and a new bulkhead constructed, without impairing or removing or in any way interfering with that portion of the pier of the appellant which lies westerly of the line of solid filling or the present bulkhead line. It is also urged that the exterior line of the city has been changed several times within a few years, and that it is still subject to change, and that, if the line of solid filling should be extended to land under water in front of the proposed bulkhead which is now proposed to be constructed by the dock department it would be of immense value, and, under such circumstances, not being needed for the improvement of the water front at the present time, ought to remain in the hands of the present owners for the purpose of deriving any such benefit or profit as would come to them were such plan adopted by the legislature while they were the owners thereof. In August, 1891, at a meeting of the dock department, a resolution was passed, stating that they desired to acquire the bulkhead and wharf property, and all water rights therewith connected, between West Forty-First and Forty-Second streets; and that, as it appeared that the appellant was the owner of the same, it was resolved that the board offer to purchase the above-described premises, and pay a certain sum therefor, subject to the approval of the commissioners of the sinking fund, as provided by law; and that a copy of the preamble and resolution be served upon the appellant, and that it be requested within 10 days to answer whether it would sell the rights for the price offered. This preamble and resolutions were received by the appellant on the 1st of September, 1891,

and on the 17th of September, no answer having been made thereto, the counsel to the corporation was directed to take this proceeding. A motion for the appointment of commissioners having been made, the appellant appeared and answered, setting up the foregoing facts, and alleging that the board of directors of the company was the only body having authority to buy or sell real estate; and no meeting of said board was held during the 10 days allowed for action by the terms of the resolution of the dock department; nor was any compromise or attempt towards agreement ever had between them and the the dock department in respect to the sale or purchase of the property described in the petition. The motion to appoint commissioners having been granted, and the commissioners appointed, from such order this appeal is taken.

Various grounds are urged upon this argument for the purpose of showing that the court was without jurisdiction to appoint the commissioners in this proceeding; the first of which is that the legislature, in attempting to confer authority upon the dock department, has gone beyond the limits fixed by the constitution; and it is urged that it is evident that it was not intended to acquire all the property upon that water front, for the commissioners are prohibited from interfering with the property or rights of any other person except so far as may be necessary to insure the safety or stability of the wharves, piers, bulkheads, basins, or slips so to be constructed. And it is urged that the act grants to the city only such land under water as may be used and taken for the construction of wharves, docks, etc.; and that, as all this property is now devoted to public use, the proposed taking is not the taking of private property for public use, but is simply taking the title from the owners of such wharves, and placing the jurisdiction of the government of the same in the dock department, and placing the emoluments in the city treasury instead of the pockets of the individuals who own the same property by virtue of the grants heretofore made by the state authorities, or by the mayor, etc., under a power delegated by the state, authorizing the construction of wharves, and vesting the title to such wharves in private individuals, subject to public use; and that, if the property is taken, its new use will be no more public than its present one, the only difference being the personality of the landlord. And our attention is called to *In re Eureka Basin Warehouse & Manuf'g Co. of Long Island*, 96 N. Y. 42. But we think that the principles laid down in the case cited have no application to the case at bar. In the case cited there was an attempt to take property for private use, and to vest the title of the same in a private corporation, and the power to do so was expressly denied by the court of appeals, because they could not regard such a project as a public use, or use which justified the delegation to the company of the right of eminent domain, and that the enterprise was substantially a private one, and the pretense that it was for public use was merely colorable and illusionary. In the case at bar, however, an entirely different state of things is presented. The corporation of the city of New York is a public corporation, performing public duties; and by the legislation to which reference has been had it was intended to change the whole dock system of the harbor of New York. Instead of having divers and various private rights conflicting with the true interests of the commerce of the city, the plan was adopted of a uniform system under the control of the city. As it was stated in *Kingsland* v. *Mayor, etc.*, 110 N. Y. 578, 18 N. E. Rep. 435: "The law provided for a plan which should girdle the city with new wharves and piers belonging wholly to the municipality, and ending all private ownership along the water front. The wharves of private owners were to be purchased by agreement, or taken in the ordinary manner by proceedings under the right of eminent domain. Those rights thus to be obtained were described in the act as 'any rights, terms, easements, and privileges pertaining to any wharf property in said city, and not owned by said corporation.' Whatever could

be held against the public was to be bought or taken, but what could not was already in their ownership or control. The act vested in the department of docks authority over the whole system, and enacted from the time of the adoption of said plan no wharf, pier, bulkhead, basin, dock, slip, or any wharf, structure, or superstructure shall be laid out, built, or rebuilt within such territory or district, except in accordance with such plan." In this decision the right of the corporation to acquire the title of all property in order to carry out this plan as described by them is expressly recognized; and therefore the only question which may be presented is whether the property which it is proposed to take is necessary for the purpose of carrying out that plan. It is urged by the appellant that the petition seeks to acquire more property than is justified by the action of the dock department, and more than is required for the purpose of carrying out this plan. This map or plan shows the location of the bulkhead. It shows that it is proposed to build piers at the foot of Forty-First and Forty-Second streets; and it shows that it is a part and parcel of the plan that the space between these piers should be a basin or slip, as the department was expressly prohibited by law from the building of piers without intervening water spaces of at least 100 feet. It shows, therefore, that the lands under water, described in the petition, are absolutely necessary for the carrying out of the map or plan which was adopted by the dock department in reference to the premises in question; basins and slips being as much a part of the plan as the erection and maintenance of the piers themselves; and the authority in reference to the acquisition of property for construction and maintenance in the one case is just as explicit as in the other. It is further urged that nothing appears in the map showing the necessity for the removal of the appellant's pier, or the acquisition of the land under water between the new bulkhead line and Thirteenth avenue, or the right to take wharfage from Thirteenth avenue when built, and that therefore the proceeding was unauthorized. This objection seems to have been answered by what has heretofore been said. The plan shows the necessity of the acquisition in order that that plan should be carried out, and that it could not be carried out without the removal of the appellant's pier. This seems to establish the necessity of acquisition which conferred authority upon the dock department to acquire.

It is further urged that, as a condition precedent of any authority for the commencement of these proceedings, it must appear that no price can be agreed upon between the owners and the department of docks. And the claim is made that no offer has ever been made for this property; that it was only a provisional offer, and that nobody could be called upon to accept an offer conditional upon the approval of the commissioners of the sinking fund; and that it was necessary that the commissioners of the sinking fund should assent to the offer in advance, so that an agreement would have been reached by the acceptance upon the part of the appellant. In answer to this objection it seems sufficient to say that the offer made by the dock department was all that the statute authorized them to make. The provision of the statute is that said department may agree with the owners of any such property, etc., upon a price for the same, and shall certify such agreement to the commissioners of the sinking fund, and, if said commissioners approve of such agreement, they may take from the owners the necessary conveyances. Therefore the commissioners of the sinking fund have no power to approve in advance of an offer to be made by the department. Neither have the dock department the right to make an absolute offer, but it must be subject to the approval of the commissioners of the sinking fund. This offer they made. Of this offer no notice was taken. The claim that the board of directors of the appellant did not meet is no answer, because, if such an excuse might prevail, then if an owner, being a corporation, did not desire its land to be taken, it might not convene its board of directors at all, and thus the right be de-

feated. There is no pretense that the appellant would have accepted the offer if the board of directors had met. Consequently there seems to be no ground for the last objection mentioned. We see no reason, therefore, for interfering with the order of the court below, and think that ample authority was conferred for the making of the same, and that it should be affirmed, with $10 costs and disbursements.