NASHVILLE, C. & ST. L. RY. v. TAYLOR et al.

(Circuit Court, M. D. Tennessee. March 15, 1898.)

1. COURTS—JURISDICTION.
 Jurisdiction is the power to hear and determine the subject-matter in controversy between parties to a suit, to adjudicate or exercise any judicial power over them.

2. JURISDICTION OF FEDERAL COURTS.
 While, in determining a question of jurisdiction in courts of the United States, great care should be exercised not to entertain jurisdiction upon too doubtful ground, yet those courts have no more right to decline the exercise of jurisdiction which is given than to usurp that which is not given.

3. SAME.
 In that class of cases in which a federal question is involved, and on which jurisdiction in the courts of the United States depends, the character of the question is the same whether the jurisdiction exercised is appellate, original, or by removal, the jurisdiction in either form depending upon the constitutional grant of power.

4. SAME—SUPREME AND CIRCUIT COURTS.
 From this principle it follows that decisions of the supreme court of the United States in cases brought before it from the circuit courts, and those on writ of error to the highest court of a state, are equally instructive in determining when there is a federal question such as supports the original juris-

diction of the circuit court as being a suit "arising under the constitution or laws of the United States, or treaties made, or which shall be made, under their authority" (excluding those which grow out of "a commission held or authority exercised under the United States").

5. SAME.

Whether a suit is one that arises under the constitution or laws of the United States is determined by the questions involved. If from them it appears that its correct decision depends upon the construction of either, then the case is one arising under the constitution or laws of the United States.

6. SAME—QUESTION OF JURISDICTION.

There is a clear distinction between the existence of a federal question, for the purpose of jurisdiction, and the actual decision of that question on its merits. The jurisdiction of the federal courts does not depend upon the validity of the claim set up under the constitution or laws of the United States, but upon the fact that the claim involves a real and substantial dispute or controversy in the suit.

7. FOURTEENTH AMENDMENT—EXECUTION OF STATE STATUTE.

State action, to which the prohibitions of the fourteenth amendment to the constitution of the United States extend, is not limited to a legislative enactment, as it comes from the hands of the legislature, but extends to all instrumentalities and agencies officially employed in the execution of the law down to the point where the personal and property rights of the citizen are touched.

8. SAME—EQUAL PROTECTION OF THE LAWS.

What constitutes a denial of the "equal protection of the laws" depends, in a large measure, upon what rights have been conferred or protection extended under the constitution and laws of the particular state in which the question arises.

9. SAME—OPPRESSIVE DISCRIMINATION.

When a state itself undertakes to deal with its citizens by legislation, it may not single out a class of citizens, and subject that class to oppressive discrimination, especially in respect to those rights so important as to be protected by constitutional guaranty.

10. SAME.

While it may be true that the proposition that a tax statute, or a tax laid under a statute, is in violation of the constitution of the state, is not of itself necessarily sufficient to constitute a violation of Const. U. S. Amend. 14, yet when, in addition, the statute results in an arbitrary and oppressive discrimination in regard to a large class of citizens, or a large species of property, it is such class legislation, and such denial of the equal protection of the laws, as renders it obnoxious to the fourteenth amendment.

11. SAME—PROVISION OF STATE CONSTITUTION.

Where the organic law of a state has brought every citizen in the state into one constitutional class for the purpose of taxation, and has provided that taxes shall be assessed and levied on value as the only basis, and at a rate equal and uniform in proportion to value, it is not competent, under the form of classification, to divide up this class, and violate the constitution.

12. JURISDICTION OF FEDERAL COURT—FOURTEENTH AMENDMENT—STATE TAX LAW.

Complainant brought suit in the federal circuit court in Tennessee against the state board of equalizers, to enjoin the certification by them to the state comptroller of the assessed valuation on complainant's property for taxation for 1897 and 1898, upon the ground, among others, that under the laws applicable to railroad and telephone properties it had been deprived of the constitutional right of equalization provided for and allowed in respect to all other property in the state subject to taxation, and in consequence its property had been assessed at 25 to 40 per cent. more in proportion to value than other classes of property. The state constitution (article 2, § 28) provides that "all property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be equal and uniform throughout the state. No one species of prop-

erty * * * shall be taxed higher than any other species * * * of the same value." *Held*, on demurrer, that the suit involved a federal question, under the fourteenth amendment to the federal constitution, which conferred jurisdiction upon the circuit court.

Vertrees & Vertrees, J. M. Dickinson, Smith & Maddin, East & Fogg, and J. D. B. De Bow, for complainant.

G. W. Pickle, Atty. Gen., James C. Bradford, and Granberry & Marks, for defendants.

CLARK, District Judge. This suit is brought against the defendants as the state board of equalizers, to enjoin the certification by them to the state comptroller of the assessed valuation on complainant's property for taxation for 1897 and 1898, and in this method to prevent the comptroller from certifying the apportioned valuations to the various counties and municipal corporations in the state entitled to collect taxes in proportion to the mileage of railway lying in such counties and municipal corporations. It appears from the allegations of the bill in this case, as it did in those in Railroad and Telephone Cases, 85 Fed. 302, that the complainant sought to have the assessments corrected before the board of equalizers, and the bills tender or offer to pay the full amount of the taxes which would be due with complainants' property assessed at the same rate at which other property in the state is assessed. The general grounds of relief stated in the bill are:

"(1) That the assessments were made by the state railroad commissioners, appointed under an act which, it is claimed, is unconstitutional, as violating the state constitution, and the United States constitution, and these assessors could not, therefore, lawfully make the assessments. (2) That the same property had been already validly assessed and certified for the year 1897, and that a reassessment for the year 1897 is unauthorized and void. (3) That discrimination is made against railroad property, which, if sold for unpaid taxes, is not sold subject to redemption, while other property as a species or class is. This, it is claimed, is a denial of the equal protection of the law by the state. (4) Errors in receiving and rejecting evidence by the board are specified. (5) It is alleged that plaintiff has been deprived of the right of equalization under the laws applicable to railroad and telephone properties, while such equalization is provided for and allowed in respect to all other property in the state subject to taxation. It is alleged that, in consequence of the denial of this right, complainant's property is assessed at 25 to 40 per cent. more in proportion to value than other classes of property in the state. This, it is said, is in violation of the state constitution, and also of Const. U. S. Amend. 14, wherein it is provided: 'Nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.' "

The provision of the state constitution is as follows:

"All property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be equal and uniform throughout the state. No one species of property from which a tax may be collected, shall be taxed higher than any other species of property of the same value." Const. Tenn. art. 2, § 28.

In this connection the bill sets out, somewhat in detail, the provisions of the tax laws applicable to railroad and telephone properties as a class, and those which apply to other property as a class, including the features which it is claimed are discriminating in character, stating also the results of these laws in their practical administration.

The case is heard on application for injunction and on demurrer to the bill.

The question as to the jurisdiction of this court, raised by the demurrer, must first be considered and decided, for it depends upon the disposition to be made of that question whether it is within the province of this court to determine any other issue presented in the case. This is the question to which the discussion has been mainly directed, and relates to federal, as distinguished from state, jurisdiction. The argument has taken such a range as renders it necessary to examine at some length into the general jurisdiction of the courts of the United States, original and appellate, over "suits of a civil nature at common law or in equity," as shown by the decisions of the supreme court of the United States and the legislation of congress, first referring to the constitutional grant or declaration of the judicial power, which lies at the very foundation of the whole matter. Among other specified cases, the national constitution declares that "the judicial power shall extend to all cases in law and equity arising under this constitution, the laws of the United States and treaties made, or which shall be made under their authority." Const. art. 3, § 2. The constitution further ordains "that the judicial power of the United States shall be vested in one supreme court, and in such inferior courts as the congress may, from time to time, ordain and establish." Id. § 1. The constitution expressly extended the original jurisdiction of the supreme court of the United States to certain named cases, and conferred on that court appellate jurisdiction over all other cases coming within the national judicial power, "with such exceptions, and under such regulations, as the congress shall make." The constitution did not otherwise undertake to distribute the jurisdiction,—that subject being left to congress,—the constitution in that respect not being self-executing. It has consequently been held from the beginning that the appellate jurisdiction of the supreme court can only be exercised in accordance with the acts and regulations of congress upon that subject. Wiscart v. D'Auchy (1794) 3 Dall. 321; American Const. Co. v. Jacksonville, T. & K. W. Ry. Co., 148 U. S. 378, 13 Sup. Ct. 758; Mining Co. v. Turck, 150 U. S. 141, 14 Sup. Ct. 35. Jurisdiction is the power to hear and determine the subject-matter in controversy between parties to a suit, to adjudicate or exercise any judicial power over them. Rhode Island v. Massachusetts, 12 Pet. 657. The supremacy of the national constitution and laws was declared in this language:

"This constitution and the laws of the United States, which shall be made in pursuance thereof, shall be the supreme law of the land." Const. U. S. art. 6, cl. 2.

To preserve this supremacy, it was deemed necessary to invest the courts of the United States with the power of original or final determination of all causes of the classes specified in the constitution.

In Cohens v. Virginia, 6 Wheat. 380, the supreme court of the United States said:

"The general government, though limited as to its objects, is supreme with respect to those objects. This principle is a part of the constitution, and, if there be any who deny its necessity, none can deny its authority."

And, speaking of the obligation to preserve the principles and supremacy of the constitution, the court observed:

"One of the instruments by which this duty may be peaceably performed is the judicial department. It is authorized to decide all cases of every description arising under the constitution or laws of the United States."

The same proposition was stated in another form by the court in Whitten v. Tomlinson, 160 U. S. 238, 16 Sup. Ct. 300, Mr. Justice Gray saying:

"By the judicial system of the United States, established by congress under the power conferred upon it by the constitution, the jurisdiction of the courts of the several states has not been controlled or interfered with, except so far as necessary to secure the supremacy of the constitution, laws, and treaties of the United States."

And so, in Osborn v. Bank, 9 Wheat. 818, the court said:

"All governments which are not extremely defective in their organization must possess, within themselves, the means of expounding, as well as enforcing, their own laws. If we examine the constitution of the United States, we find that its framers kept this great political principle in view. The second article vests the whole executive power in the president, and the third article declares 'that the judicial power shall extend to all cases in law and equity arising under this constitution, the laws of the United States, and treaties made, or which shall be made under their authority.' This clause enables the judicial department to receive jurisdiction to the full extent of the constitution, laws, and treaties of the United States, when any question respecting them shall assume such a form that the judicial power is capable of acting on it. That power is capable of acting only when the subject is submitted to it by a party who asserts his rights in the form prescribed by law. It then becomes a case, and the constitution declares that the judicial power shall extend to all cases arising under the constitution, laws, and treaties of the United States."

In the cases of Cohens v. Virginia, 6 Wheat. 264, and Osborn v. Bank, 9 Wheat. 738, the reasons for the grant of judicial power to the courts of the United States, and the extent and limits of such power, are explained at length, and with great care; and these leading cases have been often affirmed, followed, and applied down to the present time. U. S. v. Old Settlers, 148 U. S. 468, 13 Sup. Ct. 650.

It must be observed in the outset, and never forgotten, that the jurisdiction of the courts of the United States, depending on the subject-matter or character of the case, whether exercised directly as original jurisdiction, or indirectly in the form of appellate jurisdiction over final judgments of the state courts, extends to and is limited by the class of cases specified in the constitution in which the jurisdiction depends upon the character of the case. The application of this proposition will appear further on.

In Osborn v. Bank, 9 Wheat. 818, Mr. Chief Justice Marshall, speaking for the court, said:

"Original jurisdiction, so far as the constitution gives a rule, is co-extensive with the judicial power. We find in the constitution no prohibition to its exercise in every case in which the judicial power can be exercised. It would be a very bold construction to say that this power could be applied in its appellate form only to the most important class of cases to which it is applicable. The constitution establishes the supreme court, and defines its jurisdiction. It enumerates cases in which its jurisdiction is original and exclusive, and then defines that which is appellate, but does not insinuate that in any such case the power cannot be exercised in its original form by courts of original jurisdiction. It is not insinuated that the judicial power, in cases depending on the character of the cause, cannot be exercised in the first instance in the courts of.

the Union, but must first be exercised in the tribunals of the state; tribunals over which the government of the Union has no adequate control, and which may be closed to any claim asserted under a law of the United States. We perceive, then, no ground on which the proposition can be maintained that congress is incapable of giving the circuit courts original jurisdiction in any case to which the appellate jurisdiction extends."

It is very true that congress, in the distribution of jurisdiction not otherwise distributed and extended by the constitution itself, may confer all or less than all of this jurisdiction on different courts of the Union, and may vest such jurisdiction in those courts in an original or appellate form, as it may think best; but in the distribution of jurisdiction the constitutional limit on jurisdiction must be respected, and cannot be exceeded. So that jurisdiction, original or appellate, as depending on the subject-matter or character of the litigation, must be limited to cases involving a federal question, and cannot be extended to cases nonfederal in their character. Practically, and in suits of a civil nature, the cases coming within the jurisdiction of the courts of the United States divide themselves into two great classes: First, where the jurisdiction is founded on the character of the parties; and, second, where jurisdiction depends on the subject-matter or character of the suit. In regard to these two classes of cases the supreme court, in Cohens v. Virginia, supra, said:

"In one description of cases the jurisdiction of the court is founded entirely on the character of the parties, and the nature of the controversy is not contemplated by the constitution. The character of the parties is everything, the nature of the case nothing. In the other description of cases the jurisdiction is founded entirely on the character of the case, and the parties are not contemplated by the constitution. In these the nature of the case is everything, the character of the parties nothing."

In the judiciary act of 1887, as corrected by the act of 1888 (25 Stat. 434), the provision with respect to the original jurisdiction of this court is:

"That the circuit courts of the United States shall have original cognizance concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, and arising under the constitution or laws of the United States, or treaties made, or which shall be made under their authority."

The original cognizance here is "concurrent with the courts of the several states," for the presumption in all cases is, and justly so, that the courts of the states will do what the constitution and laws of the United States require. St. Louis, I. M. & S. R. Co. v. Southern Exp. Co., 108 U. S. 24, 2 Sup. Ct. 6; City of New Orleans v. Benjamin, 153 U. S. 424, 14 Sup. Ct. 905. When the jurisdiction is founded upon the subject-matter alone, regardless of the citizenship of the parties, the case must be one arising under the national constitution or laws, or, as the common expression is, must be a case which involves a "federal question." The early provision made by congress in the judiciary act of 1789 (section 12) for the removal of causes from the state courts to the courts of the United States, re-enacted in substance in Rev. St. § 369, as clause 1, and continued in force until 1875, did not authorize a removal from the state courts to the courts of the United States on account of the presence in the case of a federal ques-

tion. Indeed, the first act of congress which conferred on the circuit courts of the United States general jurisdiction of suits of a civil nature at common law or in equity "arising under the constitution or laws of the United States, or treaties made, or which shall be made under their authority," was the act of 1875 (18 Stat. 470). Tennessee v. Union & Planters' Bank, 152 U. S. 459, 14 Sup. Ct. 654. In this judiciary act of 1875 is found the explanation for the enlarged limits of federal jurisdiction, original and by way of removal, noticeable in recent years. Under the act of 1875, which gave to the federal courts original jurisdiction of cases involving a federal question, it was held that this jurisdiction could be exercised only in cases in which the plaintiff's statement of his cause of action showed that he relied on some right under the federal constitution or laws. Metcalf v. Watertown, 128 U. S. 586, 9 Sup. Ct. 173; Mining Co. v. Turck, 150 U. S. 138, 14 Sup. Ct. 35. But under section 2 of the same act it was sufficient to justify a removal by the defendant on the same ground if the record, at the time of the removal, showed that either party claimed a right under the constitution or laws of the United States. Tennessee v. Union & Planters' Bank, 152 U. S. 460, 14 Sup. Ct. 654.

Now, the first section of the act of 1887 relating to the original jurisdiction of the federal courts in this class of cases, where the federal question is the ground of jurisdiction, is identical in language and effect with the corresponding section of the act of 1875, except that the jurisdictional amount is increased; and, of course, the section in each act relating to the original jurisdiction of this court must receive the same construction. Removal of suits by defendants under section 2 of this act of 1887 is limited to suits "of which the circuit courts of the United States are given original jurisdiction by the preceding section." The jurisdiction of the circuit court is therefore limited on removal by the defendant to such suits as might have been instituted in that court by the plaintiff under the first section, and the effect was to change and greatly restrict jurisdiction by removal. The result is that a case not depending upon the citizenship of the parties nor otherwise specially provided for, cannot be removed from a state court into a circuit court of the United States as one arising under the constitution or laws of the United States, unless that appears by the plaintiff's statement of his own claim; and, if it does not so appear, the want cannot be supplied by any statement in the petition for removal, or any pleading subsequent to plaintiff's statement of his own claim, as might have been done under the corresponding clause in the second section of the act of 1875. Chappell v. Waterworth, 155 U. S. 102, 15 Sup. Ct. 34. The effect is to decrease the number of cases which may be brought into this court from the state courts by removal, and to increase the number of cases which will be brought before the supreme court on writ of error in the exercise of its appellate jurisdiction over final judgments rendered by the highest courts of the states in which a federal question is involved. Under the existing judiciary act, jurisdiction in this court by removal is limited strictly to cases which might have been brought in this court in the first instance. This restriction, it will be observed, relates to the time and mode in which the federal question is presented,.

and not to the character of the question itself as being of a federal nature; that question being the same in respect of both original and removal jurisdiction. The jurisdiction of the circuit courts of the United States was, by this act, contracted in other respects, which need not be noticed, thus manifesting a tendency toward the limits of the original judiciary act of 1789.

Under the judicial system of the United States as now established by congress under the power conferred upon it by the constitution, the courts of the United States, besides their original jurisdiction, exercise jurisdiction in three different methods over proceedings instituted in the courts of the states, and subsequently brought before the courts of the United States: First. Cases may be removed on writ of error to final judgments rendered by the highest court of a state in cases in which there is set up or claimed a right under the constitution, laws, or treaties of the United States, and the decision of the state court is against such right. Rev. St. § 709. In this class of cases the final judgments of the highest courts of the states may be re-examined and reversed or affirmed by the supreme court of the United States. Second. Cases may be removed into the circuit court of the United States from a state court under section 2 of the judiciary act of 1887 "of suits of a civil nature arising under the constitution or laws of the United States, or treaties made or which shall be made under their authority," which has already been sufficiently referred to. Third. In the exercise of the power conferred on them, the supreme, circuit, and district courts may grant writs of habeas corpus for the purpose of inquiring into the cause of restraint of liberty of prisoners held in custody under authority of a state in violation of the constitution, laws, or treaties of the United States, and other specified cases. Whitten v. Tomlinson, 160 U. S. 238, 239, 16 Sup. Ct. 297. With respect to the appellate jurisdiction of the supreme court of the United States over final judgments of the highest court of the state on writ of error, it is to be remarked that the re-examination of such judgment extends only to the federal question, and not to other issues in the case of a nonfederal character, and the question must be one of law, and not of fact. Murdock v. City of Memphis, 20 Wall. 590; Dower v. Richards, 151 U. S. 658, 14 Sup. Ct. 452; Union Nat. Bank of Chicago v. Louisville, N. A. & C. R. Co., 163 U. S. 329, 16 Sup. Ct. 1039. Consequently, if the judgment of the state court was rested on grounds independent of the federal question sufficient in themselves to sustain the judgment, the writ of error will be dismissed. Hammond v. Johnston, 142 U. S. 73, 12 Sup. Ct. 141; Haley v. Breeze, 144 U. S. 130, 12 Sup. Ct. 836. The court may, of course, examine the case sufficiently to enable it to deal properly with the federal question, and to determine whether there are other grounds sufficient to support the judgment regardless of the federal question.

It is to be further observed that to sustain the original jurisdiction of this court, as well as the jurisdiction by removal of cases from a state court under section 2 of the judiciary act, where the jurisdiction depends on the existence of a federal question, the suit must be one arising directly under the constitution or laws of the United States,

or treaties made or which shall be made under their authority; whereas, under Rev. St. § 709, the appellate jurisdiction of the supreme court of the United States extends to suits in which any right, title, or privilege is claimed under the constitution, or any treaty or statute of the United States, or under "a commission held, or authority exercised under the United States," and the decision is against such right, title, or privilege. So that the appellate jurisdiction extends to cases not only where the federal question arises directly or primarily under the constitution, treaty, or statute, but to cases where the question arises, or is involved indirectly, or secondarily, under "a commission held or authority exercised under the United States." Carson v. Dunham, 121 U. S. 422, 7 Sup. Ct. 1030. The court, referring to this distinction in the case just cited, said:

"Before considering further this branch of the case, it is proper to notice the difference between the provisions of the act of 1875 for the removal of suits presenting federal questions, and those in section 709 of the Revised Statutes for the review by this court of the decisions of the highest courts of the states. Under the act of 1875, for the purposes of removal, the suit must be one 'arising under the constitution or laws of the United States, or treaties made or which shall be made under their authority'; that is to say, the suit must be one in which some title, right, privilege, or immunity on which the recovery depends will be defeated by one construction of the constitution, or a law or treaty of the United States, or sustained by a contrary construction. Starin v. City of New York, 115 U. S. 248, 257, 6 Sup. Ct. 28, and cases there cited. But under section 709 there may be a review by this court of the decisions of the highest courts of the states in suits 'where any title, right, privilege, or immunity is claimed under the constitution, or any treaty or statute of, or commission held or authority exercised under, the United States, and the decision is against the title, right, privilege, or immunity, specially set up or claimed by either party under such constitution, treaty, statute, commission, or authority.' For the purposes of a removal, the constitution or some law or treaty of the United States must be directly involved, while for the purposes of review it will be enough if the right in question comes from a 'commission held or an authority exercised under the United States.' Cases, therefore, relating to the jurisdiction of this court for review, are not necessarily controlling in reference to removals."

It is to be observed again that the distinction here pointed out, does not relate to any difference in the nature of the federal question on which jurisdiction depends, exercised in either form, but relates to a difference in the mode in which the question arises, and grows out of the more comprehensive language employed in reference to appellate jurisdiction under section 709 than in the judiciary act in which original jurisdiction is determined and defined. The class of cases, then, to which the appellate jurisdiction of the supreme court of the United States extends, is more comprehensive than the class coming within the original jurisdiction of this court by reason of the manner in which the question is presented. This is so, however, only because congress has made it so, and not because, under the definition of federal jurisdiction, as contained in the constitution, the exercise of jurisdiction in the two methods might not have been made co-extensive as to the class of cases.

In Mayor v. Cooper, 6 Wall. 252, Mr. Justice Swayne, giving the judgment of the court, said:

"As regards all courts of the United States inferior to this tribunal, two things are necessary to create jurisdiction, whether original or appellate. The constitution must have given to the court the capacity to take it, and an act of con-

gress must have supplied it. Their concurrence is necessary to vest it. It is the duty of congress to act for that purpose up to the limits of the granted power. They may fall short of it, but cannot exceed it. To the extent that such action is not taken, the power lies dormant. It can be brought into activity in no other way. Jurisdiction, original or appellate, alike comprehensive in either case, may be given. The constitutional boundary line of both is the same. Every variety and form of appellate jurisdiction, within the sphere of the power, extending as well to the courts of the states as to those of the nation, is permitted. * * * The jurisdiction here in question involves the same principle, and rests upon the same foundation, with that conferred by the twenty-fifth section of the judiciary act of 1789."

It has been seen that, while the appellate jurisdiction extends to a larger class of cases, the actual exercise of that jurisdiction is restricted to the federal question only. On the contrary, while the original jurisdiction of this court under section 1 of the judiciary act and its jurisdiction by removal under section 2 of the same act is limited to cases in which the federal question is directly involved, when the jurisdiction does properly attach, it extends to the whole case, and to all of the issues raised, whether of a federal or nonfederal character, and the court has power to decide upon all questions. Osborn v. Bank, 9 Wheat. 738; Mayor v. Cooper, 6 Wall. 247; Southern Pac. R. Co. v. California, 118 U. S. 109, 6 Sup. Ct. 993; Ames v. Kansas, 111 U. S. 449, 4 Sup. Ct. 437; Railroad Co. v. Mississippi, 102 U. S. 135. And so in a direct appeal from the final judgment of a circuit court in such cases to the supreme court of the United States the jurisdiction of that court in reviewing the judgment extends to the whole case, and that court may pass by the federal question, which gives jurisdiction, and dispose of the case upon questions of general or local law, independently of the federal question, as was done in the case of Santa Clara Co. v. Southern Pac. R. Co., 118 U. S. 394, 6 Sup. Ct. 1132, and Insurance Co. v. Austin, 168 U. S. 685, 18 Sup. Ct. 223. It is apparent, I think, without extending the discussion further, that in that class of cases in which a federal question is involved, and on which jurisdiction in the courts of the United States depends, the character of the question is the same, whether the jurisdiction exercised is appellate, original, or by removal, the jurisdiction in either form depending on the constitutional grant of power. In this view, decisions of the supreme court of the United States in cases brought before it from the circuit courts of the United States, and those on writ of error to the highest court of a state, are equally instructive in determining when there is a federal question, such as supports the original jurisdiction of this court as being a suit "arising under the constitution or laws of the United States, or treaties made or which shall be made under their authority," excluding, of course, from the original jurisdiction, those which grow out of "a commission held or authority exercised under the United States," as explained in Carson v. Dunham, 121 U. S. 422, 7 Sup. Ct. 1030, and again in Cooke v. Avery, 147 U. S. 375, 13 Sup. Ct. 340.

This inquiry into the exercise of jurisdiction in different forms, as depending on a federal question, has been thought necessary in view of the ground on which the argument for defendants proceeds. The contention for defendants is that the federal questions on which original and appellate jurisdiction, under section 709, Rev. St., depend, are

different. It is further insisted that color of ground for the federal claim justifies the exercise of the appellate jurisdiction, while the federal claim, to support original jurisdiction, must be well founded. I do not think either position is tenable. It will be well, before dealing more closely with the question of jurisdiction here raised, to note the clear distinction between the existence of a federal question, for the purpose of jurisdiction, and the actual decision of that question on its merits. Whether there is a claim which presents the federal question, and whether that claim is well founded, when considered on its merits, are different and distinct questions. The one goes to jurisdiction, and the other to the merits of the case. It is true, the question must be raised, and it is equally true that the court must take jurisdiction before it can determine whether the right is valid or well founded. This distinction must be attentively observed to avoid confusion. The distinction was referred to in the case of Mayor v. Cooper, 6 Wall. 247, the court saying:

"We entertain no doubt of the constitutionality of the jurisdiction given by the acts under which this case has arisen. The validity of the defense authorized to be made is a distinct subject. It involves wholly different inquiries. We have not had occasion to consider it. It has no connection whatever with the question of jurisdiction."

And again, in Insurance Co. v. Needles, 113 U. S. 574, 5 Sup. Ct. 681, Mr. Justice Harlan said:

"And our jurisdiction is not defeated because it may appear, upon examination of this federal question, that the statutes of Illinois are not repugnant to the provisions of that instrument. Such an examination itself involves the exercise of jurisdiction. The motion to dismiss the writ of error upon the ground that the record does not raise any question of a federal nature must, therefore, be denied."

So, in Southern Pac. R. Co. v. California, 118 U. S. 112, 6 Sup. Ct. 995, Mr. Chief Justice Waite, delivering the judgment of the court, said:

"Applying these rules, which must now be considered as settled, to the present case, it is apparent that the court below erred in deciding that the suit was not removable, for it distinctly appears that the right of the state to recover was made by the pleadings to depend (1) on the power of the state to tax the franchises of the corporation derived from the acts of congress, which were specially referred to, as well as the property used in connection therewith; and (2) on the effect of article 14 of the amendment of the constitution on the validity of the statutes under which the taxes sued for were levied. The first depended on the construction of the acts of congress, and the second on the construction of the constitutional amendment. If decided in one way, the state might recover; if in another, it would be defeated, at least in part. The right of removal does not depend upon the validity of the claim set up under the constitution or laws. It is enough if the claim involves a real and substantial dispute or controversy in the suit. In this case there can be no doubt about that."

The distinction was brought out clearly again in the recent case of Insurance Co. v. Austin, 168 U. S. 695, 18 Sup. Ct. 227, in which Mr. Justice White, speaking for the court, said:

"Of course, the claim must be real and colorable, not fictitious and fraudulent. The contention here made, however, is not that the bill, without color of right, alleges that the state law and city ordinances violate the constitution of the United States, but that such claim as alleged in the bill is legally unsound. The argument, then, in effect, is that the right to a direct appeal to this court does

not exist where it is claimed that a state law violates the constitution of the United States, unless the claim be well founded. But it cannot be decided whether the claim is meritorious, and should be maintained, without taking jurisdiction of the case."

The same distinction had been referred to, though in general terms, in Cohens v. Virginia, 6 Wheat. 264; the court saying:

"In such cases the constitution and the law must be compared and construed. This is the exercise of jurisdiction. It is the only exercise of it which is allowed in such a case. * * * The whole merits of this case, then, consist in the construction of the constitution and the act of congress. The jurisdiction of the court, if acknowledged, goes no further. This we are required to do without the exercise of jurisdiction. The counsel for the state of Virginia have, in support of this motion, urged many arguments of great weight against the application of the act of congress to such a case as this; but those arguments go to the construction of the constitution, or of the law, or of both, and seem, therefore, rather calculated to sustain their cause upon its merits than to prove a failure of jurisdiction in the court."

In determining a question of jurisdiction in courts of the United States great care should be exercised not to entertain jurisdiction upon too doubtful ground. The principle which should control the court's action in respect to such a question was well stated in the case already referred to more than once, Cohens v. Virginia; Mr. Chief Justice Marshall saying:

"It is most true that this court will not take jurisdiction if it should not, but it is equally true that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur which we would gladly avoid; but we cannot avoid them. All we can do is to exercise our best judgment, and conscientiously to perform our duty."

It is conceded, and could not be controverted, that if the Railroad Tax Cases, 13 Fed. 722, and County of Santa Clara v. Southern Pac. R. Co., 18 Fed. 385, are to be accepted as a sound exposition of the law, this court has jurisdiction of the case presented in the bill. The insistence is that these cases can no longer be regarded as authority. This contention is based in part upon the ground that when the latter case went before the supreme court of the United States in Santa Clara Co. v. Southern Pac. R. Co., 118 U. S. 394, 6 Sup. Ct. 1132, that court did not expressly approve the doctrine in relation to the fourteenth amendment as declared in the court below. I am unable to see that there is any force in this contention, as the court passed by, and did not find it necessary, in the view it took of the case, to consider or determine, the federal question involved, and the case was disposed of on other questions of law. So, too, the cases of Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 10 Sup. Ct. 533, and Home Ins. Co. v. New York State, 134 U. S. 594, 10 Sup. Ct. 593, are relied on as establishing a doctrine in conflict with those cases. Reference will be made to these cases further on, and they are passed by for the present. The cases at circuit, referred to, were decided by Mr. Justice Field of the supreme court of the United States, and Sawyer, circuit judge, upon elaborate argument and full consideration. In view

of the eminent character of the judges, it will be conceded, I think, that these cases must be regarded as of the highest authority which any case decided at the circuit can possess. The cases have been often followed and approved on the circuit, as well as in courts of the highest authority in some of the states.

In Fraser v. McConway & Torley Co., 82 Fed. 257, decided in 1897, the Railroad Tax Cases, 13 Fed. 722, were referred to approvingly by Judge Acheson in the following language:

"The court there, in discussing the prohibitions of the amendment, said: 'Unequal exactions in every form or under any pretense are absolutely forbidden, and, of course, unequal taxation, for it is in that form that oppressive burdens are usually laid.'"

The cases have also been cited by recent text writers as authority, without a suggestion anywhere that the doctrine of the cases has been questioned in subsequent decisions. I think it will be admitted that under such circumstances it is doubtful whether I could properly assume to deny the authority of these cases, unless the doctrine of the cases has been disapproved by a circuit court of appeals, or the supreme court of the United States, by clear implication, as it is admitted that no court has done so expressly.

In Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 10 Sup. Ct. 533, the question considered was the validity of an assessment on the nominal value of bonds, instead of their real value, held by residents of Pennsylvania; and among the grounds for the appeal it was claimed that the tax was in violation of the fourteenth amendment, because the assessment was upon the nominal value, and not the real value of the bonds, because owners of the bonds had no notice, and no opportunity to be heard, and because the deduction of the tax from the interest due the bondholders in Pennsylvania took their property without due process of law, and denied to them the equal protection of the law. On motion to dismiss the writ of error for want of jurisdiction, it was held that there was clearly a federal question raised, and that the writ could not be dismissed for want of jurisdiction. The judgment of the supreme court of Pennsylvania was affirmed. The court, discussing the fourteenth amendment as affecting the ordinary regulations in a tax system adopted by a state, said:

"All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their constitution. But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject that would include all cases. They must be decided as they arise."

In Home Ins. Co. v. New York State, 134 U. S. 594, 10 Sup. Ct. 593, the question was as to the validity of a tax imposed by statute upon the corporate franchise or business of all corporations doing business in the state of New York, or incorporated under the laws of that state. The tax was measured by the extent of the dividends of the corporation in the current year. The contention of the plaintiff in error was that the tax in question was levied upon its capital stock, and therefore invalid, so far as the bonds of the United States constituted a

part of that stock, which the court said would render the tax invalid if that contention were well founded. It was decided, however, that the tax was one upon the right or privilege to be a corporation, and to do business within the state in a corporate capacity, and not a tax upon the privilege or franchise which the company, when incorporated, might exercise; and that the statute as thus construed did not violate the provision of the statute of the United States exempting bonds of the United States from taxation. The case, like all cases, must be read in the light of its own facts, and the language of the opinion must be construed in connection with the subject under consideration. I cannot perceive that anything said in that case conflicts with the decision in the Railroad Tax Cases, Mr. Justice Field himself having written the opinion in both cases.

The early cases of Cohens v. Virginia and Osborn v. Bank stated at great length the jurisdiction of the courts of the United States as depending on the subject-matter and arising under the constitution and laws of the United States. The former was a case of appellate jurisdiction on error to the state court, and the latter a case of original jurisdiction, brought before the supreme court by appeal from the circuit court of Ohio. Those cases made no distinction in the character of the federal question involved in the two distinct forms of exercising jurisdiction, nor has any distinction or difference been suggested in subsequent cases in which those cases have been repeatedly cited indiscriminately as defining a federal question either for original or appellate jurisdiction. In Cohens v. Virginia, 6 Wheat. 264, it was said:

"If it be, to maintain that a case arising under the constitution or a law must be one in which a party comes into court to demand something conferred on him by the constitution or a law, we think the construction too narrow. A case in law or equity consists of the right of the one party, as well as of the other, and may truly be said to arise under the constitution or a law of the United States whenever its correct decision depends on the construction of either. Congress seems to have intended to give its own construction of this part of the constitution in the twenty-fifth section of the judiciary act, and we perceive no reason to depart from that construction."

In Tennessee v. Davis, 100 U. S. 257, Mr. Justice Strong, speaking for the court, and referring to cases involving federal questions, said:

"What constitutes a case thus arising was early defined in the case cited from 6 Wheat. 264. It is not merely one where a party comes into court to demand something conferred upon him by the constitution or by a law or treaty. A case consists of the right of one party as well as the other, and may truly be said to arise under the constitution or a law or a treaty of the United States whenever its correct decision depends upon the construction of either. Cases arising under the laws of the United States are such as grow out of the legislation of congress, whether they constitute the right or privilege, or claim or protection, or defense of the party, in whole or in part, by whom they are asserted. Story, Const. § 1647; Cohens v. Virginia, 6 Wheat. 379. It was said in Osborn v. Bank, 9 Wheat. 738: 'When a question to which the judicial power of the Union is extended by the constitution forms an ingredient of the original cause, it is in the power of congress to give the circuit courts jurisdiction of that cause, although other questions of fact or of law may be involved in it.'"

In the case of U. S. v. Old Settlers, 148 U. S. 427, 13 Sup. Ct. 650, Mr. Chief Justice Fuller, speaking for the court, said:

"As a case arises under the constitution or laws of the United States whenever its decision depends upon the correct construction of either (Cohens v. Vir-

ginia, 6 Wheat, 264, 379; Osborn v. Bank, 9 Wheat. 737, 824), so a case arising from or growing out of a treaty is one involving rights given or protected by a treaty. Owings v. Norwood's Lessee, 5 Cranch, 344, 348."

In Hamblin v. Land Co., 147 U. S. 531, 13 Sup. Ct. 353, the court, through Mr. Justice Brewer, said:

"It is doubtful whether there is a federal question in this case. A real, and not a fictitious, federal question is essential to the jurisdiction of this court over the judgments of state courts. Millingar v. Hartupee, 6 Wall. 258; New Orleans v. New Orleans Waterworks Co., 142 U. S. 79, 87, 12 Sup. Ct. 142. In the latter case it was said that 'the bare averment of a federal question is not in all cases sufficient. It must not be wholly without foundation. There must be at least color of ground for such averment, otherwise a federal question might be set up in almost any case, and the jurisdiction of this court invoked simply for the purpose of delay.'"

And in the case before referred to of Insurance Co. v. Austin, 168 U. S. 695, 18 Sup. Ct. 223, the court enunciated the same rule as to what constitutes a federal question. See, also, New Orleans v. Benjamin, 153 U. S. 411, 14 Sup. Ct. 905.

In Cooke v. Avery, 147 U. S. 384, 13 Sup. Ct. 344, Mr. Chief Justice Fuller, giving the judgment of the court, used this language:

"Whether a suit is one that arises under the constitution or laws of the United States is determined by the questions involved. If from them it appears that some title, right, privilege, or immunity on which the recovery depends will be defeated by one construction of the constitution or a law of the United States, or sustained by the opposite construction, then the case is one arising under the constitution or laws of the United States. Osborn v. Bank, 9 Wheat. 738; Starin v. City of New York, 115 U. S. 248, 257, 6 Sup. Ct. 28. In Carson v. Dunham, 121 U. S. 421, 7 Sup. Ct. 1030, it was ruled that it was necessary that the construction either of the constitution or some law or treaty should be directly involved in order to give jurisdiction, although for the purpose of the review of the judgments of state courts under section 709 of the Revised Statutes, it would be enough if the right in question came from a commission held or authority exercised under the States."

City R. Co. v. Citizens' St. R. Co., 166 U. S. 557, 17 Sup. Ct. 653, was a case of original jurisdiction, brought before the supreme court of the United States on appeal from the circuit court for the district of Indiana. Both parties were corporations and citizens of Indiana, and the federal question was whether the Citizens' Railroad Company had a valid contract with the city of Indianapolis which was impaired by a subsequent contract with the City Railway Company. It was held that the circuit court had original jurisdiction of the case; Mr. Justice Brown, speaking for the court, saying:

"There can be no doubt that the circuit court had jurisdiction of the case, notwithstanding the fact that both parties are corporations and citizens of the state of Indiana. It should be borne in mind in this connection that jurisdiction depended upon the allegations of the bill, and not upon the facts as they subsequently turned out to be. The gravamen of the bill is that under the act of the general assembly of 1861, and the ordinances of January 18, 1864, and April 7, 1880, the Citizens' Railroad Company had become vested with certain exclusive rights to operate a street railway in the city of Indianapolis, either in perpetuity or for the term of thirty years or thirty-seven years, which the city had attempted to impair by entering into a contract with the City Railway Company to lay and operate a railway upon the same streets. All that is necessary to establish the jurisdiction of the court is to show that the complainant had, or claimed in good faith to have, a contract with the city, which the latter had attempted to impair."

Hamilton Gaslight & Coke Co. v. Hamilton City, 146 U. S. 258, 13 Sup. Ct. 90, was a case on appeal from the circuit court of the United States for the Southern district of Ohio, and the question presented was whether a certain ordinance of the city of Hamilton, a municipal corporation of Ohio, impaired the obligation of contract rights, and deprived the complainant, a corporation of Ohio, of property without due process of law. The jurisdiction was sustained, although the case on its merits was decided against the complainant. In Water Co. v. Keyes, 96 U. S. 199, the court, in determining whether the removal of a suit from a state court to a federal court was sufficient, as well as the form in which the federal question should appear, used this language:

"Before, therefore, a circuit court **can** be required to retain a cause under this jurisdiction, it must in some form appear upon the record, by a statement of facts 'in legal and logical form,' such as is required in good pleading (1 Chit. Pl. 213), that the suit is one which 'really and substantially involves a dispute or controversy' as to a right which depends upon the construction or effect of the constitution, or some law or treaty of the United States. If these facts sufficiently appear in the pleadings, the petition for removal need not restate them: but, if they do not, the omission must be supplied in some form, either by the petition or otherwise."

In Spencer v. Merchant, 125 U. S. 345, 8 Sup. Ct. 921, the validity of an assessment upon land under a statute of the state was called in question, it being alleged that the statute was unconstitutional and void, because it afforded the owners no opportunity to be heard upon the whole amount of the assessment. It was alleged that this was taking property without due process of law. Mr. Justice Gray, in disposing of the jurisdictional question, said:

"The question submitted to the supreme court of the state was' whether this assessment on the plaintiff's lot was valid. He contended that the statute of 1881 was unconstitutional and void, because it was an attempt by the legislature to validate a void assessment, without giving the owners of the lands assessed an opportunity to be heard upon the whole amount of the assessment. He thus directly and in apt words presented the question whether he had been unconstitutionally deprived of his property without due process of law, in violation of the first section of the fourteenth amendment to the constitution of the United States, as well as of article 1, § 7, of the constitution of New York; and no specific mention of either constitutional provision was necessary in order to entitle him to a decision of the question by any court having jurisdiction to determine it. The adverse judgment of the supreme court, affirmed by the court of appeals of the state, necessarily involved a decision against a right claimed under the fourteenth amendment to the constitution of the United States, which this court has jurisdiction to review."

Other cases might be referred to, but I do not regard this as necessary in view of the principle clearly deducible from these cases, and in view of which, as applied to the facts found in the statement of this case, I feel constrained to hold that there is here really and substantially involved such a federal question as supports the jurisdiction of this court over the case, both in respect of the right claimed and the mode in which the right is set up in the bill.

It was said in the discussion at bar that the prohibitions of the fourteenth amendment are directed against state action only, and the correctness of this proposition is fully conceded, but a too limited definition and a too narrow view of what constitutes state action

must not be entertained. State action, to which the prohibitions of the fourteenth amendment extend, is not limited to a legislative enactment as it comes from the hands of the legislature, but extends to all instrumentalities and agencies officially employed in the execution of the law down to the point where the personal and property rights of the citizen are touched. Under any other interpretation it would be practically possible to reduce the constitutional guaranty to a mere brutum fulmen. A statute might be framed entirely fair upon its face, which, by the omission of necessary affirmative provisions, and a failure to contain needed restrictive directions, would furnish color of authority for practices thereunder which would be destructive of rights most carefully guarded by the constitution. Such a result would be still more easily accomplished by legislation in respect to one class of citizens or property and separate legislation in regard to another class in relation to the same subject, containing such differences in provisions as to necessarily bring about "clear and hostile discriminations against particular persons and classes," and resulting in oppressive and forced contributions from one class as compared with the other; and such is, or may be practically the result of the legislation in this state in respect to tax assessments, according to the construction put upon that legislation by the defendants, for, while boards of equalization are created with express power to equalize assessments in regard to other species of property, and required to do so, the separate enactments in relation to railroad and telephone properties confer upon the assessors and board of equalization no such power, according to their construction of the acts and their action thereunder. The board of equalizers construe the statute as requiring them to take the curious and self-inconsistent position that they are created a board of equalization, but without power to equalize.

In Osborn v. Bank, 9 Wheat. 737, it was said by Mr. Chief Justice Marshall:

"It is not unusual for a legislative act to involve consequences which are not expressed."

In Scott v. McNeal, 154 U. S. 45, 14 Sup. Ct. 1112, the supreme court of the United States said (Mr. Justice Gray giving the opinion):

"The fourteenth article of amendment of the constitution of the United States, after other provisions which do not touch this case, ordains: 'Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.' These prohibitions extend to all acts of the state, whether through its legislative, its executive, or its judicial authorities. Virginia v. Rives, 100 U. S. 313, 318, 319; Ex parte Virginia, Id. 339, 346; Neal v. Delaware, 103 U. S. 370, 397. And the first one, as said by Chief Justice Waite in U. S. v. Cruikshank, 92 U. S. 542, 554, repeating the words of Mr. Justice Johnson in Bank v. Okely, 4 Wheat. 235, 244, was intended 'to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice.'"

So, too, in the late case of Chicago, B. & Q. R. Co. v. City of Chicago, 166 U. S. 226, 17 Sup. Ct. 581, Mr. Justice Harlan, speaking for the court, said:

"But it must be observed that the prohibitions of the amendment refer to all the instrumentalities of the state,—to its legislative, executive, and judicial au-

thorities,—and, therefore, whoever by virtue of public position under a state government deprives another of any right protected by that amendment against deprivation by the state 'violates the constitutional inhibition; and, as he acts in the name and for the state, and is clothed with the state's power, his act is that of the state.' This must be so, or, as we have often said, the constitutional prohibition has no meaning, and 'the state has clothed one of its agents with power to annul or evade it.' Ex parte Virginia, 100 U. S. 339, 346, 347; Neal v. Delaware, 103 U. S. 370; Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064; Gibson v. Mississippi, 162 U. S. 565, 16 Sup. Ct. 904."

This doctrine is now fully established. Reagan v. Trust Co., 154 U. S. 390, 14 Sup. Ct. 1047; Road Co. v. Sandford, 164 U. S. 578, 17 Sup. Ct. 198; Hodgson v. Vermont, 168 U. S. 272, 273, 18 Sup. Ct. 80.

It is not necessary, for the purpose of the present question, to review the decisions of the supreme court of the United States in relation to the proper construction of the fourteenth amendment and its application to the varying facts of different cases. That court itself, as has been seen, expressly declined to give an exhaustive definition of the amendment, preferring to deal with the cases as they arise, and allow the construction in this way to develop as the cases call for judgment.

In Mobile & O. R. Co. v. Tennessee, 153 U. S. 486, 14 Sup. Ct. 968, the court, through Mr. Justice Jackson, said:

"We do not deem it necessary to consider the further point urged by counsel for defendants in error that the exemption clause in question is in conflict with the fourteenth amendment of the constitution of the United States. That amendment conferred no new and additional rights, but only extended the protection of the federal constitution over rights of life, liberty, and property that previously existed under all state constitutions."

In a recent case (State v. Holden, 14 Utah, 71, 46 Pac. 756) the Utah supreme court had under consideration the fourteenth amendment. Zane, C. J., said:

"The last clause of section 1 of amendment 14 of the federal constitution declares that no state shall 'deny to any person within its jurisdiction the equal protection of the laws.' The slaves in the various states in which slavery existed having been liberated during the late war, congress deemed it necessary to make them citizens of the United States, and forbade the states the denial to them the equal protection of the law. At that time the laws of all the states in terms gave equal protection to all white persons. This amendment, however, is general, and forbids the denial to any class of persons the equal protection of the laws by any state; and we have no doubt that class legislation is forbidden."

See, also, Munn v. Illinois, 94 U. S. 123.

What must constitute a denial of the equal protection of the law will depend, in this view, in a large measure, upon what rights have been conferred, or protection extended, under the constitution and laws of the particular state in which the question arises. As the constitution and laws of the states vary, the proposition that each case must, to an extent, depend upon its own facts, is specially applicable to this class of cases. When the state itself undertakes to deal with its citizens by legislation, it does so under certain limitations, and it may not single out a class of citizens, and subject that class to oppressive discrimination, especially in respect to those rights so important, as to be protected by constitutional guaranty. That the prohibitions of that amendment are now regarded as protecting the citizen against a denial of the equal protection of the law, and against

taking property without due process of law, under the power of taxation, is a proposition clearly deducible from the many causes in which that question has been considered. And it does not militate against this view that on account of the importance of taxation to the existence of government the supreme court of the United States has bestowed upon the amendment and its proper interpretation the greatest consideration and much care in relation to that subject. Whether the question be considered upon principle or upon judicial authority, it might be well said, I think, that no power is more liable to abuse, or more destructive in its effect when exercised with an unequal and uneven hand, than the power of taxation. It has been declared by the supreme court of the United States that "the power to tax involves the power to destroy." McCulloch v. Maryland, 4 Wheat. 429.

In Loan Ass'n v. Topeka, 20 Wall. 655, that court said:

"Of all the powers conferred upon government that of taxation is most liable to abuse. Given a purpose or object for which taxation may be lawfully used, and the extent of its exercise is, in its very nature, unlimited. * * * The power to tax is therefore the strongest, the most pervading, of all the powers of government, reaching directly or indirectly to all classes of the people. It was said by Chief Justice Marshall, in the case of McCulloch v. Maryland, that the power to tax is the power to destroy. A striking instance of the truth of the proposition is seen in the fact that the existing tax of ten per cent. imposed by the United States on the circulation of all other banks than the national banks drove out of existence every state bank of circulation within a year or two after its passage. This power can as readily be employed against one class of individuals and in favor of another, so as to ruin the one class and give unlimited wealth and prosperity to the other, if there is no implied limitation of the uses for which the power may be exercised."

It may be true that the proposition that a tax statute, or the tax laid under a statute, is in violation of the constitution of the state, is not of itself necessarily sufficient to constitute a violation of the fourteenth amendment; but when, in addition to the violation of the state constitution, the statute results in an arbitrary and oppressive discrimination in regard to a large class of citizens, or a large species of property, it is such class legislation and such denial of the equal protection of the laws as renders it obnoxious to the fourteenth amendment. And the state constitution is important in determining what the rights of the citizen are, and whether equal protection of the law is being denied. If this be not so, the result is that the fourteenth amendment must be regarded as failing to afford protection in respect of the most important of all property rights, and the most dangerous of all powers.

In California v. Pacific R. Co., 127 U. S. 1, 8 Sup. Ct. 1073, the court observed:

"Taxation is a burden, and may be laid so heavily as to destroy the thing taxed, or render it valueless. As Chief Justice Marshall said in McCulloch v. Maryland, 'the power to tax involves the power to destroy.' Recollecting the fundamental principle that the constitution, laws, and treaties of the United States are the supreme law of the land, it seems to us almost absurd to contend that a power given to a person or corporation by the United States may be subjected to taxation by a state."

So, in County of Santa Clara v. Southern Pac. R. Co., 18 Fed. 385, Mr. Justice Field said of this same power of taxation:

"It is a matter of history that unequal and discriminating taxation, leveled against special classes, has been the fruitful means of oppressions, and the cause of more commotions and disturbance in society, of insurrections and revolutions, than any other cause in the world. It would, indeed, as counsel in the County of San Mateo Case, 13 Fed. 145, ironically observed, be a charming spectacle to present to the civilized world, if the amendment were to read as contended it does in law: 'Nor shall any state deprive any person of his property without due process of law, except it be in the form of taxation, nor deny to any person within its jurisdiction the equal protection of the laws, except it be by taxation.' No such limitation can be thus ingrafted by implication upon the broad and comprehensive language used. The power of oppression by taxation without due process of law is not thus permitted, nor the power by taxation to deprive any person of the equal protection of the laws."

In McCulloch v. Maryland, 4 Wheat. 427, Chief Justice Marshall said:

"The only security against the abuse of this power is found in the structure of the government itself. In imposing a tax the legislature acts upon its constituents. This is, in general, a sufficient security against erroneous and oppressive taxation."

This view of the subject necessarily assumes that the tax burden is laid on all equally and evenly, for otherwise the theory can no longer be sustained. If class discrimination can be accomplished directly or indirectly, the majority can easily destroy the minority, assuming that corporations are so far "constituents" as not to be distinguished in this regard. It is not difficult, then, to see the wisdom of the state constitution in requiring equality in the burden of taxation. The organic law of Tennessee has brought every citizen in the state into one constitutional class for the purpose of taxation, and provided that taxes shall be assessed and levied on value only as the basis, and at a rate equal and uniform in proportion to value. It is not competent, under the form of classification, to divide up this class and violate the constitution. If the state has, then, by its own constitution, guarantied certain rights to all of its citizens alike, without discrimination, what just or valid objection can be offered to a restraint which deprives the state of the power to deny to a class of citizens the equal protection thus afforded? Is it to be assumed that the good of the state will ever require that it should do so, or that its people, through the legislative department, would ever understandingly undertake to adopt measures which would have that effect? To do so would not only be a great wrong, but violative of sound public policy and sound political economy. It would hardly be insisted that the good of any state requires that it should be left free to deny to its citizens the equal protection of its laws in the form of taxation, or to deprive any person of property without due process of law in that form. If the fourteenth amendment, as construed and applied, goes no further than to prevent such a result as this, what valid objection can be assigned to its application, to this extent, to the power of taxation as well as to state action in other respects? It seems to me that the argument for defendants in the denial that there is here a federal question proceeds upon grounds which deny the application of the fourteenth amendment to the state's power of taxation in any form and to any extent whatever. It will appear from what has been said that I do not think this view can be maintained. Certainly, the state is left

free to apply different methods of ascertaining value, and different methods and remedies for the collection of taxes when properly assessed. For these purposes, the differences in the nature and uses of property may be taken into account; but all questions of this character relate to methods of procedure, and not the fundamental right involved. It will be observed by the reading of the provisions of the state constitution, in relation to the power of taxation, that the principle of equality and uniformity is declared in this language: "No one species of property from which a tax may be collected shall be taxed higher than any other species of property of the same value." Const. Tenn. art. 2, § 28. But the constitution contains a like limitation on any method of procedure which may be adopted by the state in the exercise of this power, for it further provides: "All property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be equal and uniform throughout the state." Id. The legislature is not left with an unlimited or untrammeled power in the method of procedure adopted to ascertain value, but is under a mandatory injunction to ascertain or fix this value, "so that taxes shall be equal and uniform throughout the state." The constitution, in giving effect to the principle of uniformity and equality, is self-executing, and operates on the mode of procedure as well as the result. To say that this obvious and easily understood guaranty can be denied, because (in the very face of an undisputed and great wrong) a class of taxpayers are not able to prove affirmatively that different boards of assessors acted by concert or fraudulently, would be a confession of weakness not commendable in a judiciary organized under a nation declaring constitutional rights, and founded on that equality in right, in governmental protection, and in governmental burden which constitutes the very life of a government like ours, and is the great principle which runs through all of its institutions and constitutional enactments. The truth is that the tax system of the state, executed through different boards, prescribing duties for one board not prescribed for another, is just such a system as would, in its execution, not probably result in an equal and uniform assessment, but in an unequal and unconstitutional one; and the expected has actually happened, according to the allegations of the bill.

The conclusion that the prohibitions of the fourteenth amendment apply to the taxing power to the extent indicated, and that there is a federal question which gives jurisdiction, still leaves for disposition the questions here involved on their merits, which will be treated separately, it being intended in this opinion to deal only with the question of jurisdiction.